Tagged for Publication



**ORDERED in the Southern District of Florida on July 25, 2014.**

John K. Olson, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

**HANS JUERGEN FALCK**,                    Case No. 12-24855-JKO
                                           Chapter 7
            Debtor.
_____/

**ORDER DENYING MOTION FOR REHEARING [ECF 302], WITHOUT
PREJUDICE TO FURTHER MOTION SEEKING SIMILAR RELIEF**

This case is before the Court to consider an undated letter [ECF 302] from Astrid Kaufmann, the spouse of Antonio Diaz. Ms. Kaufmann's letter was filed July 23, 2014, and arrived in chambers on July 24, 2014. Mr. Diaz is currently in the custody of the United States Marshal pursuant to the Order [ECF 299] (the "Civil Contempt Order") entered July 16, 2014, which found Mr. Diaz to be

in willful civil contempt of this Court. Ms. Kaufmann's letter (the "Kaufmann Letter") will be treated as a motion for amendment of the Civil Contempt Order pursuant to Federal Rule of Bankruptcy Procedure 9023, applying Federal Rule of Civil Procedure 59.

The Kaufmann Letter asks that the Court "give [her] a chance to get [Mr. Diaz] out on Bond and let him make a Payment Plan." It states that Mr. Diaz "will commit to paying monthly." It further offers that Ms. Kaufmann "can come up with a couple of thousand $ for Bond Money or start Pay for his Payment Plan." Ms. Kaufmann represents that she believes that "he has really no money left, because he would part with it now after the jail lesson."

Mr. Diaz has been in the custody of the United States Marshal since July 14, 2014, for the sole purpose of coercing him to pay $35,400 in fines, penalties, and sanctions which he had been ordered to pay in the Sanctions Order [ECF 245] entered January 29, 2014.[1] At the hearing held July 14, 2014, which resulted in entry of the Civil Contempt Order, Mr. Diaz acknowledged that he has not paid or attempted to pay any of the fines, penalties, or sanctions set forth in the Sanctions Order. Mr. Diaz stated at that hearing that he lacked available funds. However, in the bankruptcy schedules filed in Mr. Diaz's pending Chapter 13 case[2], Mr. Diaz swore under penalty of perjury that investment property he owns in Miami has a value of $120,000, subject to a secured claim of $82,000. Mr. Diaz testified at the July 14th hearing that he had refinanced this Miami property in January or February of 2014, and had received "around $60,000" from that refinancing. He also claimed to have lost "most of it" playing poker at the Seminole Hard Rock Casino, although in answer to Question 8 on his sworn Statement of Financial Affairs in Case 14-18844-PGH, Mr. Diaz

---

[1] No appeal was taken from the Sanctions Order and it is now final.

[2] Case 14-18844-PGH pending in the West Palm Beach Division of this Court.

swore under penalty of perjury that he suffered a gambling loss of $30,000 on January 1, 2014. It is difficult to reconcile these sworn representations with the Kaufmann Letter contentions that Mr. Diaz is impecunious. If Mr. Diaz refinanced the Miami investment property for $60,000 earlier this year, and lost half of it gambling, where is the other $30,000? And if the Miami property has $38,000 in equity, why has that equity not been liquidated to pay the sanctions?

The entire purpose of Mr. Diaz's incarceration is to coerce him to pay the amounts he owes under the Sanctions Order, and not to punish him. "While any imprisonment, of course, has punitive and deterrent effects, it must be viewed as remedial if the court conditions release upon the contemnor's willingness to [comply]." *Shillitani v. United States*, 384 U.S. 364, 369 (1966). Coercion of this sort is appropriate only when the person being coerced has the ability to pay. "Incarceration does not change a civil contempt proceeding to a criminal one so long as such incarceration is limited in that the contemnors are released upon payment of the fine or upon a showing that they are financially unable to pay the fine." *In re Spanish River Plaza Realty Co.*, Ltd., 155 B.R. 249, 254 (Bankr. S.D. Fla. 1993). In other words, a person incarcerated as a result of civil contempt must have the key to his jail cell in his pocket. "Where the court exercises such coercive power...for the purpose of compelling future obedience, those imprisoned 'carry the keys of their prison in their own pockets,' *In re Nevitt*, 117 F. 448, 461 (8th Cir. 1902); by obedience to the court's valid order, they can end their confinement; and the court's coercive power in such a 'civil contempt' proceeding ends when its order has been obeyed." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 331-32 (1947).

On the face of the evidence, Mr. Diaz does have the ability to pay. It is apparent from the Kaufmann Letter that Ms. Kaufmann has at best limited knowledge of her husband's finances; her

3

belief that "he has really no money left" stems solely from her belief that if he did have any money "he would part with it now after the jail lesson." Ms. Kaufmann thus backs into her conclusion not as a result of her knowledge of Mr. Diaz's financial situation but rather by applying the standard of what a rational person would do: a rational person incarcerated for failing to pay court-ordered sanctions would use the money they have – if they have any – to get out of jail. Ms. Kaufmann assumes that Mr. Diaz has no money because he has not tendered funds in order to be released.

But Ms. Kaufmann herself notes her husband is not a rational actor, noting that "he did not listen to me or to friends," and asking that "if they have any programs for his irrational behavior improvement Therapy, please put him in one." Mr. Diaz's behavior throughout this case has been one manifestation of irrational conduct after another. The Court cannot conclude, after Mr. Diaz has been incarcerated for a mere 10 days, that his failure to pay the sanctions is necessarily the result of his inability to do so.

While the Court cannot conclude that Mr. Diaz is unable to comply with the Sanctions Order as a result of the Kaufmann Letter, the Court will consider modification of the Contempt Order and the release of Mr. Diaz from the custody of the United States Marshal upon a proper evidentiary showing of inability to pay. The Court will likewise consider a payment plan upon such a showing. Because the civil contempt sanction imposed on Mr. Diaz is coercive in nature, and because it has no connection to any criminal proceeding, the concept of release on the posting of a bond, as requested by Ms. Kaufmann, is simply inapposite.

Ms. Kaufmann notes that she is "not a legal expert in these things and it is overwhelming." The Court is very sympathetic to her situation. As both a practical matter and a legal matter, Ms. Kaufmann cannot act as Mr. Diaz's lawyer, or otherwise act for him, in this case. An individual in

4

a federal court proceeding may represent himself or herself, but only a lawyer authorized to practice before the court may represent another person. This has been the law in the United States since at least the Supreme Court's decision in *Osborn v. Bank of the United States,* 22 U.S. 738 (1824). In his current position, Mr. Diaz needs a lawyer.

This Court has on several prior occasions permitted persons incarcerated for civil contempt to be released from custody upon the approval of a payment plan. As a practical matter, any such plan should be discussed with the lawyers for the other parties in the case: Robert J. Bigge, Jr., who represents Hans Juergen Falck, Andres Montejo, former counsel to Mr.Falck, Leslie S. Osborne, counsel to Diana E. Rodriguez, Diana E. Rodriguez, Damaris D. Rosich-Schwartz, who represents the United States Trustee, and Marc P. Barmat, the Chapter 7 trustee in this case. Their contact information is set forth below. In any event, the Court will not consider a payment plan or other modification of the Contempt Order except after notice to these parties and a hearing.

For the reasons set forth above, the relief sought in the Kaufmann Letter, treated as a motion under Fed. R. Bankr. P. 9023, is **DENIED**, without prejudice to the seeking of similar relief by Antonio Diaz. **SO ORDERED.**

###

Copies to:
Astrid Kaufmann
7403 Heathley Drive
Lake Worth, FL 33467

Robert J. Bigge, Jr., Esquire
Bigge & Rodriguez, PA
915 Middle Rive Drive, #401

Ft Lauderdale, FL 33304

954-400-7322

brpa@biggerodriguez.com

Andres Montejo, Jr., Esquire

6157 NW 167 St, #F21

Miami, FL 33015

305-817-3677

amontejo@andresmontejolaw.com

Leslie S. Osborne, Esquire

Rappaport Osborne & Rappaport, PL

1300 N Federal Hwy, #203

Boca Raton, FL 33432

561-368-2200

office@rorlawfirm.com

Diana E. Rodriguez, Esquire

100 E Linton Blvd, #407B

Delray Beach, FL 33483

305-898-4858

info@dianaerodriguez.com

Damaris D. Rosich-Schwartz, Esquire

Office of the US Trustee

51 SW 1st Ave, #1204

Miami, FL 33130

305-536-7360

damaris.d.rosich-schwartz@usdoj.gov

Marc P. Barmat, Esquire

Furr & Cohen PA

2255 Glades Rd, #337W

Boca Raton, FL 33431

561-395-0500

mbarmat@furrcohen.com